UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

TOWN OF ARLINGTON,
    Plaintiff,

v.

ITRON, INC.,
    Defendant.

CIVIL ACTION NO. 21-11657-AK

ORDERS ON DEFENDANT, ITRON, INC.'S, MOTIONS FOR
ATTORNEYS' FEES AND SANCTIONS (##69, 71)[1]

KELLEY, U.S.M.J.

## Introduction

Plaintiff, the Town of Arlington, filed suit against defendant, Itron, Inc., in the Middlesex Superior Court for breach of contract and warranty and violation of Mass. Gen. Laws ch. 93A in relation to the alleged premature failure of a water meter reading system that Itron sold to the town and installed pursuant to a 2009 contract. (#13 at 5-14).[2] Itron removed the town's suit to this court on October 12, 2021. (#1.) After a scheduling conference on February 7, 2022, District Judge Angel Kelley ordered that the parties serve initial disclosures by February 17, and that Itron file an anticipated motion for summary judgment on Arlington's Chapter 93A claim by April 4. (#28.) The parties timely served initial disclosures, and Itron timely filed the partial summary judgment motion. (#76-7 at 10; #76-8 at 6; #41.) The parties went to mediation but did not settle. (#54.)

---

[1] The motions have been referred to this court. (#88.)

[2] Claims against defendant, Elster AMCO Water, LLC, have been voluntarily dismissed without prejudice. (#20.)

1

On July 26, 2022, Judge Kelley ordered that fact discovery proceed while Itron's partial summary judgment motion was pending, and that discovery could commence on docketing of the June 26 order. (#57.) Judge Kelley ordered that the parties serve written disclosures by November 30, 2022, and set the close of fact discovery for June 30, 2023, noting that the court was unlikely to extend the June 30 deadline given the length of time provided by the schedule and age of the case. *Id*. On December 2, 2022, Judge Kelley denied Itron's partial summary judgment motion. (#60.)

On April 28, 2023, Itron moved to compel Arlington to respond to its first requests for production, interrogatories, and requests for admissions. *See* #61, motion, #62, memorandum and exhibits. As set forth in Judge Kelley's June 1, 2023 order granting the motion, those requests had been served on October 10, 2022. (#65.) Arlington did not respond by the November 9 deadline. *Id*. Itron called Arlington on November 17 and was told that Arlington would respond. *Id*. Itron sent a follow-up email on November 18, to which Arlington did not respond, and then re-served the same requests on November 21. *Id*. Arlington did not respond by the December 21 deadline. Counsel had spoken on December 9 and Itron was again told that Arlington would respond. *Id*. Itron also reached out to Arlington on April 3, 2023. *Id*. The motion was filed several weeks later. *Id*. Arlington did not file an opposition. *Id*.; *see also* #64.

Judge Kelley ordered that Arlington provide its responses to Itron's interrogatories and produce the requested documents within twenty-one days, that is, by June 22, 2023, finding that Arlington had waived any objections to the interrogatories and requests for production. (#65.) Judge Kelley deemed Arlington to have admitted each statement set forth in the requests for admissions. *Id*.

Regarding Itron's request for expenses in relation to the motion, *see* #61 at 1-2, #62 at 5-6, Judge Kelley explained that Itron could file a separate motion for reasonable attorneys' fees and costs under Fed. R. Civ. P. 37, adding:

> Such motion shall comply with the Federal Rules of Civil Procedure and the Local Rules, see L.R. 7.1(b)(1), including by providing a detailed explanation of the facts and legal authority in support of its position and a breakdown of the exact fees and costs for which it seeks reimbursement.

(#65.)

On June 9, 2023, Judge Kelley set a status conference for July 13. (#66.) On July 12, Itron filed a motion for a protective order. *See* #67, motion, #68 memorandum and exhibits. About an hour and a half before the July 13 status conference, Itron filed #69, the present motion for attorneys' fees. And about fifteen minutes before the July 13 status conference, Itron filed #71, the present motion for sanctions. In the motion for sanctions and memorandum (and during the status conference), Itron acknowledged that Arlington served interrogatory responses on July 12 and produced documents earlier on July 13. (#71 at 1; #72 at 1.) The record shows that Arlington emailed interrogatory responses at 5:27 p.m. on July 12, *see* #76-4 at 2, and document productions between 4:19 and 4:25 a.m. on July 13, *see* #76-5 at 2.

At the July 13 status conference, Judge Kelley allowed Itron's motion for a protective order. (#75.) Judge Kelley also extended the fact discovery deadline through the next status conference, set for August 31, 2023. (#75.)

On July 27, 2023, Arlington filed oppositions to Itron's motions for attorneys' fees, *see* #77, and sanctions, *see* #76. With leave, Itron filed replies in further support of the motions for attorneys' fees, *see* ##82, 83, and sanctions, *see* ##84, 85.

The day before the August 31 status conference, Itron moved for leave to file a sur-reply in further support of the motion for sanctions. (#86.) After the August 31 status conference, when

3

all three pending motions were referred by Judge Kelley, *see* ##87, 88, this court granted leave. (#89); *see* #90, supplemental reply.

Fact discovery is complete. (#92.) Expert discovery is set to close on December 31, 2023. Dispositive motions are due January 31, 2024. (#81.)

After careful review of the record and for the reasons set forth below, #69, Itron's motion for attorneys' fees, is **DENIED** in part and **ALLOWED** in part, while #71, Itron's motion for sanctions, is **DENIED** without prejudice.[3]

I. Attorneys' Fees (#69).

Itron seeks an award of $7,368 for its motion to compel, based on 6.6 hours billed by Attorney Dwight Francis, at $855 an hour, and 2.5 hours billed by Attorney Aimee Oleson, at $690 an hour. (#70 at 4.)

First, Arlington does not oppose the entry of an award of attorneys' fees for Itron's motion to compel. The town only opposes the amount. *See* #77, #77-1. Fed. R. Civ. P. 37(a)(5) provides that where a motion to compel is granted, the court must, after an opportunity to be heard, order the party whose conduct necessitated the motion, the party or attorney advising the conduct, or both, to pay the movant's reasonable expenses in filing the motion, including attorneys' fees,

---

[3] Motions seeking modest monetary sanctions, like #69, are non-dispositive and a Magistrate Judge can therefore issue an order under 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a), instead of a report and recommendation under 28 U.S.C. § 636(b)(1)(B)-(C) and Fed. R. Civ. P. 72(b). *See Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 5-6 (1st Cir. 1999); *see also ML-CFC 2007-6 P.R. Properties, LLC v. BPP Retail Properties, LLC*, 951 F.3d 41, 46-47 (1st Cir. 2020).
  In #71, Itron seems to be seeking dismissal or default judgment, among other sanctions. *See, e.g.*, #90 at 2. The court is not recommending dismissal, its equivalent, or default judgment. The court thus issues an order. *Cf. Zhuang v. Saquet*, #09-cv-12163-NMG, 2014 WL 916406, at *3 (D. Mass. Mar. 6, 2014) (reviewing report declining to recommend dismissal as sanction under non-dispositive motion standard).
  Objections to these orders must comply with Fed. R. Civ. P. 72(a).

unless (i) the movant filed the motion before attempting in good faith to obtain disclosure; (ii) the party's non-disclosure was substantially justified; or (iii) other circumstances make an award unjust. *Id*. Itron did not file its motion to compel before attempting in good faith to obtain disclosure. The motion was granted. Arlington's non-disclosure was not substantially justified. This court is aware of no other circumstances that make an award unjust.

An award is therefore warranted, and the court uses the familiar "lodestar" method to calculate the amount. *See*, *e.g.*, *Barth v. City of Peabody*, #15-cv-13794-MBB, 2019 WL 8918791, at *3 (D. Mass. July 24, 2019) (lodestar is proper method for calculating award under Fed. R. Civ. P. 37) (quoting *Astro-Med, Inc. v. Plant*, 250 F.R.D. 28, 30 (D.R.I. 2008)). The lodestar amount is calculated by tallying the number of hours reasonably expected by the attorneys, subtracting excessive, redundant or otherwise unnecessary hours, and multiplying the tally by the reasonable hourly rates for the attorneys, ordinarily determined from the prevailing rates in the community for attorneys with similar qualifications, experience and competence. *Pérez-Sosa v. Garland*, 22 F.4th 312, 321 (1st Cir. 2022). Once calculated, the lodestar amount may be adjusted, upward or downward, based on specific factors. *Id*.[4]

---

[4] The factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney(s) due to acceptance of the case; (5) the customary fee; (6) the nature of the fee (fixed or contingent); (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney(s); (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) the size of awards in similar cases.

*Coutin v. Young & Rubicam P.R., Inc.*, 124 F.3d 331, 337 n.3 (1st Cir. 1997) (citation omitted).

The aim "'is to do rough justice, not achieve auditing perfection.'" *Pérez-Sosa*, 22 F.4th at 322 (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). "Because district judges 'need not, and indeed should not, become green-eyeshade accountants,' they 'may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id*. (quoting *Fox*, 563 U.S. at 838). It is the fee-seeker's burden to prove both that the hours expended and the proposed hourly rates are reasonable. *See Pérez-Sosa*, 22 F.4th at 325; *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 340 (1st Cir. 2008).

The court notes at the outset that Itron has not submitted billing records. *See* #69, #70, #83. The table within Itron's memorandum in support of its motion omits the dates on which the tasks were completed. (#70 at 4.) Moreover, Attorney Francis has billed for multiple tasks and the table does not specify what percentage of his time was spent on which task. The table is "block billed" as to Attorney Francis, lumping together the time he spent conferring with Arlington's counsel, conferring with Itron, and "drafting and revising" Itron's motion to compel. *Id*. Thus, the court cannot determine, for instance, whether the time Attorney Francis spent "revising" the motion was excessive given the time he and Attorney Oleson spent "drafting" it. *See Pérez-Sosa*, 22 F.4th at 329-330 (typical time entries include date, description of tasks, and percentage of time spent on each task; less detail than that unfairly hampers opponent and court); *Norkunas v. HPT Cambridge, LLC*, 969 F. Supp. 2d 184, 196 (D. Mass. 2013) (block billing is disfavored).

However, Arlington does not oppose the entry of a $7,368 award because of the lack of billing records or detail in the table. Instead, the town argues that 9.1 total hours is excessive for a standard motion to compel, and that Itron has not proven that the proposed hourly rates of $855 for Attorney Francis and $690 for Attorney Oleson are reasonable. (#77 at 1; #77-1 at 2-5.) The court agrees.

6

A. <u>Hours Expended</u>.

Itron argues that the hours expended are reasonable because, in attempting to obtain disclosures, it had to call and email Arlington repeatedly. (#83 at 2.) The court in no way condones Arlington's behavior but, again, notes the lack of detail in the table. Further, it is hard to believe that much time at all was spent on the calls and emails. The November 18 email was two sentences. (#62-4 at 2.) On November 21, counsel or staff presumably updated the certificates of service for the requests and attached the updated versions to an email before sending. *See* #62-6 at 8. The December 6 email was one sentence. (#62-5 at 2.) Itron previously described the December 9 discussion as "brief." (#62 at 2.) Of note, too, letter writing and telephone conversations are among the less demanding, "non-core" tasks for which the court may set a lower hourly rate. *Pérez-Sosa*, 22 F.4th at 327-328. Attorney Francis seeks his full hourly rate for the calls and emails.

In reply, Itron has provided online profiles showing that Attorney Francis, a partner in Sheppard Mullin Richter & Hampton LLP's Business Trial Practice Group, earned his law degree in 1992 while Attorney Oleson, special counsel in that group, earned her law degree in 2002. (#83-1 at 2, 4; #83-2 at 2, 3.) The court agrees with Arlington that Itron's motion to compel was standard. It was filed because Arlington failed to respond to discovery requests at all, not because Arlington's responses were deficient in specific ways. The court believes that it is reasonable for any attorney, regardless of experience, to spend one workday outlining and editing the uncomplicated procedural background and uncontroversial legal principals involved here. Therefore, the court reduces the hours billed by Attorney Francis, such that he and Attorney Oleson, together, have billed 8 hours in connection with Itron's motion to compel. The court calculates the lodestar amount based on 5.5 hours billed by Attorney Francis and 2.5 hours billed by Attorney Oleson.

B. <u>Hourly Rates</u>.

Itron has not submitted materials other than the online profiles that might help the court in determining whether the proposed hourly rates are reasonable, like an affidavit or billing records setting out the rates Attorneys Francis and Oleson typically charge at their Dallas-based practice. *See U.S. v. One Star Sloop Sailboat Built in 1930 with Hull Number 721, Named "Flash II,"* 546 F.3d 26, 38 (1st Cir. 2008) ("Reasonable hourly rates will vary depending on the nature of the work, the locality in which it is performed, the qualifications of the lawyers, and other criteria;" court can look to out-of-town counsel's actual billing practices). Itron refers the court to Attorney Francis' motion for pro hac vice admission. (#83 at 2.) The motion addresses Attorney Francis' credentials, not his or Attorney Oleson's rates. (#35.) Itron also offers to submit additional materials. (#83 at 3.) It is Itron's burden to prove the reasonableness of its proposed rates, and Judge Kelley previously ordered that any motion "provid[e] a detailed explanation of the facts and legal authority. . . ." (#65.) This court does not view its determination of reasonable hourly rates on this undeveloped record to have preclusive effect of a subsequent determination on a developed record.

The only case Itron cites in support of its proposed hourly rates is not helpful to its position or on point. (#83 at 3); *see* #70 at 4-5. In *Holt v. Raytheon Tech. Corp.*, #20-cv-11244-FDS, 2022 WL 6819544 (D. Mass. 11, 2022), Chief Judge Saylor reduced the proposed rate for the attorney with 27 years of experience from $800 an hour to $700 an hour, *see id.* at *4-5. Attorney Francis, with just four more years' experience, has billed at an even higher rate than $800 an hour. Attorney Oleson, with six fewer years' experience, has billed at a rate only slightly lower than $700 an hour. Moreover, *Holt* was an Employee Retirement Income Security Act ("ERISA") case, *see id.*, and,

8

for all that appears, this is, or at least should be, a straightforward contract case.[5] More importantly, the motion to compel itself was standard, not complex.

This court and others have remarked at the difficulty in relying on hourly rates set by colleagues because the determinations are "intrinsically related" to the complexities of the case and record developed by the fee-seeker. *Sullivan v. Experian Information Solutions, Inc.*, #16-cv-11719-MPK, 2022 WL 392848, at *5 (D. Mass. Feb. 9, 2022) (quoting *Smith v. City of Boston*, 496 F. Supp. 3d 590, 598 (D. Mass. 2020) (further citation omitted)). Nevertheless, the court sets a rate of $450 an hour for Attorney Francis and $350 an hour for Attorney Oleson, as the court finds that those hourly rates are reasonable. The rates take into account not only their respective years of experience, but also that this is a contract case and the award relates to a standard motion to compel. The motion readily could have been drafted and revised by attorneys with less experience. *See MSP Recovery Claims, Series, LLC v. Farmers Ins. Exchange*, #19-mc-91025-FDS, 2020 WL 7828802, at *2 (D. Mass. Dec. 31, 2020) (Cabell, M.J.) (involving motion to quash; applying associate rate of $335/hour to half of hours spent by seasoned commercial litigator billing at $585/hour notwithstanding that he was completing associate-level tasks, including research); *cf. Allstate Ins. Co. v. Fougere*, 594 F. Supp. 3d 212, 221, 224 (D. Mass. 2022) (given fee-seeker's failure to develop record and to differentiate between core and non-core work in what "was (or should have been) a straightforward" contract case, capping rate at $500/hour for attorney with 13 years of experience seeking maximum of $525/hour as well as attorney with 25 years of experience seeking maximum of $615/hour).

---

[5] The court rejects Itron's suggestion that this case is complex because Arlington is seeking over $1.5 million in damages. (#83 at 3.) What may be at stake for Itron and Arlington financially does not alter the substantive law applicable to Arlington's claims against Itron.

9

Calculated based on 5.5 hours billed by Attorney Francis at $450 an hour and 2.5 hours billed by Attorney Oleson at $350 an hour, the lodestar amount is $3,350.

C. <u>Adjustment</u>.

Arlington seeks a downward adjustment of the lodestar amount, specifically invoking the first ("time and labor required"), second ("novelty and difficulty of the questions"), and third ("skill requisite to perform the legal service properly") factors. (#77-1 at 4-5); *see Coutin*, 124 F.3d at 337 n.3. The calculation of the lodestar amount sufficiently accounts for those factors, so the court declines to make a downward adjustment.

II. <u>Sanctions (#71)</u>.[6]

Through its motion and first reply brief, Itron seeks an order striking Arlington's "pleading" or prohibiting Arlington from presenting evidence in support of its claims because Arlington did not comply with Judge Kelley's June 1, 2023 order to provide interrogatory responses and documents by June 22, instead providing interrogatory responses on July 12[7] and documents, without electronically stored information, on July 13.[8] (#71 at 1; #72 at 3-5; #85 at 2-5.)

---

[6] The court does not decide whether Itron's motion for sanctions should be denied because it did not confer with Arlington as required by L.R. 7.1(a)(2). (#76-1 at 3-4.) The court does note, however, that it is not persuaded by Itron's argument that conferring with Arlington about the failure to provide discovery responses sufficed. (#85 at 2-3.) Counsel for Arlington attests that Itron's counsel represented on July 11 that if Arlington provided discovery responses before the July 13 status conference, the responses "would not be an issue," and that during a pre-July 13 status conference call, counsel for Itron did not mention any sanctions motion. (#76-3 ¶¶ 1, 5.) Itron's motion was filed about fifteen minutes before the July 13 status conference started.

[7] Itron asserts that the July 12 disclosure was made "after business hours." (#72 at 1.) Arlington's July 12 email with the interrogatory responses was sent at 5:27 p.m. (#76-4 at 2.) Of note, under L.R. 5.4(d), to be considered timely filed on a particular day, parties may electronically file pleadings until 6:00 p.m. *Id*.

[8] The ESI apparently has been produced since. (#85 at 2; #90 at 3.) The court does not accept Itron's argument in its first reply brief, *see* #85 at 2, that Arlington's responses to requests for

10

In its second reply brief, Itron seeks those same sanctions as well as the exclusion of evidence, *see* #90 at 4, and default judgment, *see id*. at 5-6, given Arlington's putative (1) failure to issue a litigation hold, *see id*. at 3; (2) failure to prepare its Fed. R. Civ. P. 30(b)(6) designee, Director of Public Works Michael Rademacher, for his August 16, 2023 deposition, *see* #90 at 4-6; (3) production of 200 pages found in former town employee Teresa DeBenedictis' files just prior to her August 17, 2023 deposition, *see id*. at 3-4; and (4) continued failure to produce documents, *see id*. at 4.[9]

Fed. R. Civ. P. 37(b)(2)(A) provides that if a party violates an order to produce discovery, the court may issue "just" orders against the disobedient party, including (ii) prohibiting the party from supporting or opposing claims or defenses or from introducing specific matters in evidence; (iii) striking pleadings in whole or part; (v) dismissing the case in whole or part; and (vi) entering default judgment. Fed. R. Civ. P. 37(b)(2)(A)(ii), (iii), (v), (vi). An order to produce discovery by a particular date is an order for Rule 37(b)(2)(A) purposes. *Hinds v. Dean*, #15-cv-10073-LTS, 2017 WL 1439661, at *2 (D. Mass. Apr. 21, 2017) (Bowler, M.J.); *see also* Fed. R. Civ. P. 16(f)(1)(C) (authorizing "just" orders, including those authorized by Fed. R. Civ. P. 37(b)(2)(A)(ii)-(vii), if party violates scheduling or other pretrial order).[10]

---

production were "incomplete" because in addition to referring to specific document productions or stating that an investigation did not reveal any responsive documents, Arlington wrote that discovery was "ongoing" and "reserve[d] the right to supplement [its] response[s]." (#76-5 at 4-20.) On July 13, Judge Kelley extended the fact discovery deadline to August 31, 2023. (#75.)

[9] The only "key" outstanding document specifically identified by Itron in its second reply brief is the current contract for replacing the water meter reading system. (#90 at 4.)

[10] Separately, the court has inherent power to "manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases," *see Link v. Wabash R. Co*., 370 U.S. 626, 630-631 (1962), including the inherent power to impose appropriate sanctions for abuses of the judicial process, like violations of discovery orders. *Hinds*, 2017 WL 1439661, at *2.

There is no hard and fast rule for determining whether sanctions should be imposed for the violation of a discovery order and, if so, what sanctions. *Red Wolf Energy Trading, LLC v. BIA Capital Mgmt., LLC*, 626 F. Supp. 3d 478, 500 (D. Mass. 2022) (citing *Robson v. Hallenbeck*, 81 F.3d 1, 2 (1st Cir. 1996)). The court must consider the totality of the circumstances, including, but not limited to, the nature of the misconduct; repetition or lack thereof; degree of deliberateness; the extent to which the disobedient party had warning of the possible consequences of the misconduct; availability of an opportunity to offer an explanation and propose a lesser sanction; legitimacy of a proffered excuse; aggravating or mitigating circumstances; presence or absence of prejudice to the innocent party; degree of interference with the court's functioning; and adequacy of a lesser sanction. *Hooper-Haas v. Ziegler Holdings, LLC*, 690 F.3d 34, 38 (1st Cir. 2012); *see Red Wolf*, 626 F. Supp. 3d at 500; *see also Carranza v. Unique Auto Detail LLC*, #15-cv-14020-FDS, 2016 WL 11816242, at *3 (D. Mass. Nov. 1, 2016). The factors balance "the desirability of resolving cases on the merits against the importance of the orderly and efficient administration of justice." *Hooper-Haas*, 690 F.3d at 38 (citation omitted). Dismissal and default judgment are drastic sanctions and generally disfavored. *Red Wolf*, 626 F. Supp. 3d at 501 (involving default judgment) (citing, *inter alia*, *Torres-Vargas v. Pereira*, 431 F.3d 389, 393 (1st Cir. 2005) (dismissal sanctions are "measures of last resort")). Such drastic sanctions are typically appropriate only if there are multiple instances of misconduct. *Id*. (citing, *inter alia*, *Hooper-Haas*, 690 F.3d at 38 (default judgment may be appropriate for "persistently noncompliant litigant")).

Again, the court in no way condones Arlington's behavior, which the town has not even attempted to excuse in its opposition. *See* #76, #76-1. But the court is not inclined to recommend dismissal or default judgment as a sanction for producing interrogatory responses and documents twenty and twenty-one days, respectively, after Judge Kelley's deadline for doing so. Those

sanctions are simply too harsh under the circumstances. There is no evidence that Arlington deliberately violated Judge Kelley's June 1, 2023 order when the town belatedly provided the discovery or that it violated previous orders. Itron's arguments as to the nature of the misconduct, prejudice and interference with the court's functioning focus heavily on Arlington's delay in providing discovery leading to Itron's motion to compel. (#85 at 3-4.) But Judge Kelley sanctioned Arlington for that delay, finding that the town had waived objections to the interrogatories and requests for production and deeming it to have admitted each statement set forth in the requests for admission. (#65.) This court is focused, instead, on the violation of Judge Kelley's June 1, 2023 order. While Judge Kelley did extend the close of fact discovery to August 31, 2023, the parties reported at the November 29, 2023 status conference that fact discovery is now complete and that they expect to timely complete expert discovery. The dispositive motion deadline remains January 31, 2024. (#92; *see* #81.) *Compare Hinds*, 2017 WL 1439661, at *2 (declining to enter default judgment against defendant as sanction for providing discovery seven and twelve days after court's deadline for doing so; defense counsel communicated with plaintiff regarding belated production, suggesting that defendant did not act deliberately; defendant had not previously violated orders; and there was no showing of prejudice).[11]

---

[11] At least two circumstances distinguish this case from *Costa v. Saki, LLC*, #21-cv-10154-AK, 2022 WL 4237525 (D. Mass. Sept. 14, 2022), where Judge Kelley entered default judgment, *see id*. at *7, and on which Itron relies, *see* #83 at 3. First, in *Costa*, plaintiff was seeking sanctions against defendants:

> While this Court of course can only speculate as to Defendants' possible motives for their conduct regarding discovery, it is not difficult to understand how such obstructionist delay tactics could benefit litigants like the Defendants here. Plaintiff has brought a case alleging rather straightforward claims of retaliation in connection with unpaid wages – one which, were discovery to have actually been properly conducted, would likely be relatively easily proved or disproved. As such, Defendants' extreme stonewalling with production of records as simple as

The court is not convinced that dismissal or default judgment is an appropriate sanction even when it adds the other alleged misconduct, detailed in Itron's second reply brief, to the equation.[12] First, Itron's argument as to Arlington's failure to issue a litigation hold, *see* #90 at 3, is not accompanied by any argument or proffer that the failure resulted in destruction or loss of evidence. The one case Itron cites, *see id.*, is a spoliation case. *Integrated Comm'ns & Techs. Inc. v. Hewlett-Packard Fin. Srvcs. Co.*, #16-cv-10386-LTS, 2020 WL 4698535, at *5 (D. Mass. Aug. 13, 2020) (plaintiffs, among other things, erased email accounts and sold computers for parts).

Second, the court might have been more inclined to consider exclusion of evidence as a sanction for Arlington's late production of the 200 pages from DeBenedictis' file. However, Itron has failed to develop an adequate record. Itron has not submitted any of the 200 pages or described them in any detail. The court has no clue as to their significance. *Cf. Cavanaugh v. Taranto*, 95 F. Supp. 3d 220, 230 (D. Mass. 2015) ("…an unjustifiably delayed disclosure will merit exclusion of the delayed evidence under Rule 37(c) only if the delay also causes some harm or prejudice to the opposing party") (citing *Gagnon v. Teledyne Princeton, Inc.*, 437 F.3d 188, 197 (1st Cir. 2006)).

---

    employee payroll certainly gives at least the appearance of an intentional attempt
    to keep Plaintiff from litigation (and therefore potentially proving) his case.

*Id.* at *7. Here, defendant is seeking sanctions against plaintiff.
    Second, in *Costa*, about two weeks before doing so, plaintiff's counsel told defense counsel that plaintiff intended to file a motion for default judgment. *Id.* at *6. Here, the only affidavit in the record suggests that defense counsel told plaintiff's counsel that the discovery responses "would not be an issue" if they were provided before the July 13 status conference. (#76-3 ¶ 1.) And discovery responses were in fact provided before the July 13 status conference. (#76-4 at 2; #76-5 at 2.)

[12] For the same reasons discussed above, the court is not inclined to strike Arlington's unspecified pleading or to prohibit Arlington from presenting evidence in support of its claims. The latter type of order is the functional equivalent of dismissal.

Similarly, Itron asserts that "key" documents have yet to be produced but lists just one – the current contract for replacement of the water meter reading system, and fails to explain the significance of that contract to its defenses on liability. *See* #90 at 4. Itron also does not explain how production of that contract now prejudices its defenses on damages. Expert discovery is not closed. (#81.)

Finally, regarding Rademacher, Itron has submitted just twelve pages of testimony, *see* #90-1 at 4-15, from a deposition transcript that totals 205 pages, *see id*. at 16. The court does not have a complete picture of Rademacher's deposition testimony. With an incomplete picture, the court does not find it significant that Rademacher maybe did not receive the August 1, 2023 amended notice of deposition until August 15. (#90-1 at 4-5; *see* #90-3 at 8.) The court does not find it significant or even surprising that Rademacher could not remember "the exact topics" on which he was supposed to testify. (#90-1 at 8.) Without the full transcript, the court cannot accept Itron's argument, *see* #90 at 5, that Rademacher did not do enough to prepare for the deposition. Itron calls special attention, *see* #90 at 5, to Rademacher's testimony that he did not review the 2009 contract prior to his deposition, *see* #90-1 at 14-15. But Itron does not identify what questions it might have asked Rademacher during his deposition had he done so. Typically, a contract speaks for itself.[13, 14]

---

[13] Of note, too, in the case upon which Itron relies in arguing lack of preparation, *see* #90 at 5, the court ordered re-deposition as a sanction, not dismissal or default judgment. *Calzaturicio S.C.A.R.P.A. v. Fabiano Shoe Co., Inc*., 201 F.R.D. 33, 41 (D. Mass. 2001).

[14] For similar reasons, the court cannot accept Itron's argument, *see* #90 at 4, that severe sanction should be imposed because the delay in production of the 200 pages from DeBenedictis' files hindered its own preparation for depositions. Itron has submitted just four pages of DeBenedictis' testimony from a transcript that totals 194 pages. (#90-2 at 4-7, 8.) Moreover, Itron has not explained what re-depositions might accomplish, although it had ample time to review the 200 pages before filing its second reply brief.

Arlington's behavior is inexcusable and further dilatoriness plainly risks imposition of severe sanction, including dismissal or default judgment. Itron's arguments, however, are overblown and poorly developed. The court declines to recommend dismissal, its equivalent or default judgment and does not order lesser sanctions on this record.

Conclusion

For the reasons set forth in Part I, the court denies in part and allows in part Itron's motion for attorneys' fees, awarding $3,350.

For the reasons set forth in Part II, the court denies Itron's motion for sanctions, without prejudice.

December 5, 2023                                    /s/ M. Page Kelley
                                                    M. Page Kelley
                                                    United States Magistrate Judge